**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


Vita-Mix Corp.,                                    )          **CASE NO. 1:06 CV 2622**
                                                   )
             **Plaintiff,**          )          **JUDGE PATRICIA A. GAUGHAN**
                                                   )
        **vs.**                       )
                                                   )
Basic Holdings, Inc., *et al.*,                    )          <u>**Memorandum of Opinion and Order**</u>
                                                   )
           **Defendants.**         )


<u>**INTRODUCTION**</u>

      This matter is before the Court to construe the disputed terms of Claim 1 of U.S.

Patent No. 5,302,021.  (Doc. 33, 34, 51, 52)  Also before the court is plaintiff's motion to

strike defendant Back to Basics' opening claim construction brief.  (Doc. 43)  For the reasons

that follow, the motion to strike is DENIED.  The Court's construction of Claim 1 of U.S.

Patent No. 5,302,021 is set forth below.

      <u>**BACKGROUND**</u>

      Plaintiff, Vita-Mix Corporation, as the sole assignee of U.S. Patent No. 5,302,021

("the '021 Patent"), brings this action against defendants, Basic Holdings, Inc., f/k/a Back to

Basics Products, Inc., Focus Electrics, LLC, Focus Products Group, LLC, and West Bend

Housewares, LLC for, among other things, infringement of the '021 Patent.

The '021 Patent is entitled "Method of Preventing the Formation of an Air Pocket in a Blender."  Claim 1 is the only claim of the patent.  Claim 1 is as follows (with the disputed claim terms underlined):

> A method of <u>preventing the formation of an air pocket</u> around
>        rotating blades positioned in a pitcher of a blender,
> the air pocket being created from <u>an air channel of a cross-</u>
>        <u>sectional size defined by a member associated with the</u>
>        <u>blades,</u>
> comprising the steps of
>        supplying a fluid into the pitcher, and
>        positioning a <u>plunger</u>,
>                having a cross-sectional size approximating the
>                        cross-sectional size of the member,
>                <u>adjacent to and above</u> the rotating blades
>                <u>while maintaining the plunger free of contact</u>
>                        <u>with the pitcher</u>
>                thereby preventing the formation of an air pocket
>                        in the fluid around the rotating blades.

The parties conferred on May 24, 2007 and May 25, 2007, exchanging claim construction positions.  The Court provided a briefing schedule that permitted each party to submit an opening brief after the "meet and confer."  The briefing schedule also permitted the parties to submit rebuttal briefs to respond to the other party's contentions.  Plaintiff Vita-Mix Corporation ("Vita-Mix" or "plaintiff") and defendant Basic Holdings, Inc. ("Back to Basics" or "defendant") each submitted such briefs.  The other defendants did not submit claim construction briefs.

Plaintiff also moves to strike Back to Basics' opening claim construction brief.  Back to Basics opposes the motion.

## STANDARD OF REVIEW

"[T]he interpretation and construction of patent claims, which define the scope of the patentee's rights under the patent, is a matter of law exclusively for the court." *Markman v. Westview Instruments*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). "To ascertain the meaning of claims, [the court considers] three sources:  The claims, the specification, and the prosecution history." *Markman*, 52 F.3d at 979. The words of a claim are generally given their ordinary and customary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). The ordinary and customary meaning is to be determined from the perspective of one of ordinary skill in the art at the time of the invention. *Id.* at 1313. "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*

Accordingly, the court first looks to the claim itself, read in view of the specification. *Id.* at 1315 (The specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term."). However, while the court may look to the written description to define a term already in a claim limitation, the court may not read a limitation from the written description into a claim. *Id.* at 1323.

As stated above, the prosecution history should also be considered by the court when conducting claim construction. *Phillips*, 415 F.3d at 1317. The "prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of

3

prosecution, making the claim scope narrower than it would otherwise be." *Id.*; *see also Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) ("The purpose of consulting the prosecution history in construing a claim is to exclude any interpretation that was disclaimed during prosecution."). Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers. *Chimie*, 402 F.3d at 1384. Moreover, the prosecution history of a parent application applies with equal force to a later patent that contains the same claim limitation. *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999); *see also Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004) ("the prosecution history of one patent is relevant to an understanding of the scope of a common term in a second patent stemming from the same parent application"). "The relevant inquiry is whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter." *Cybor Corp. v. Fas Techs., Inc.*, 138 F.3d 1448, 1457 (Fed. Cir. 1998).

All other evidence is considered extrinsic and may be relied upon by the court in its discretion. *Markman*, 52 F.3d at 980; *Phillips*, 415 F.3d at 1317. However, extrinsic evidence is less reliable than intrinsic evidence. *Phillips*, 415 F.3d at 1318. Thus, the court should restrict its reliance on extrinsic evidence to educating itself regarding the field of invention or to determining what a person of ordinary skill in the art would have understood the claim terms to mean. *Id.* at 1319; *see also Markman*, 52 F.3d at 986 ("It is not ambiguity in the document that creates the need for extrinsic evidence but rather unfamiliarity of the court with the terminology of the art to which the patent is addressed."). Extrinsic evidence may not be used for the purpose of varying or contradicting the terms of the claims.

4

*Markman*, 52 F.3d at 981.

As a result, excessive reliance should not be placed on dictionaries. *Phillips*, 415 F.3d at 1321. "The main problem with elevating the dictionary to such prominence is that it focuses the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent. ... [H]eavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification." *Id.*

## **DISCUSSION**

### A.     **Motion to Strike**

Plaintiff argues it was prejudiced by defendant's allegedly late disclosure of its claim construction contentions. In December 2006, Plaintiff propounded an interrogatory requesting that defendant identify its "construction of each element and all support for such construction for claim 1 of the '021 patent that Back to Basics contends the Accused Blenders do not include." Defendant responded in February 2007, identifying proposed constructions for certain claim elements. Defendant's interrogatory response also indicated that, because discovery was in its early stages and plaintiff had not yet articulated its infringement position (which was due, pursuant to the Case Management Order, in April 2007), defendant anticipated supplementing its interrogatory response. The parties then held a "meet and confer" pursuant to the Court's Case Management Order in which defendant disclosed modified constructions for several claim elements. This meet and confer occurred before the parties' opening claim construction briefs were to be filed with the Court.

5

Several days after the meet and confer, plaintiff addressed a letter to the Court seeking to bar defendant from advancing its revised constructions in its claim construction brief. (Doc. 27)  The Court denied this relief, finding plaintiff's argument that it had been prejudiced to be without merit.  (Doc. 30)

Plaintiff's motion to strike makes essentially the same request.  Plaintiff argues that, by virtue of defendant's revised claim constructions provided at the meet and confer, plaintiff could not determine which claim terms were in dispute and, thus, could not sufficiently set forth its own proposed claim constructions in its opening brief.  The Court finds that plaintiff had adequate time after the meet and confer to prepare its own claim construction in its opening brief and to also address defendant's revised constructions in its rebuttal brief. Therefore, the motion to strike is denied.

### B.      Claim Construction

The '021 Patent issued on April 12, 1994 from U.S. Patent Application No. 59,954 ("the '954 application"), filed on May 13, 1993.  The '954 application was a continuation of U.S. Patent Application No. 860,892 ("the '892 application"), filed on March 31, 1992 and later abandoned.

The '021 Patent is directed to a method for preventing the formation of an air pocket in a blender.  The Background section of the patent provides that when mixing thick liquids in high-speed blenders a channel of air is often formed in the liquid being mixed "much as in a whirlpool effect."  This air channel, in turn, causes an air pocket (*i.e.*, an air bubble or dead air space) to form around the blades of the blender, thus preventing effective mixing of the liquid.  The prior art provided blenders with stirrers that permitted this problem to "be

6

corrected manually" by "stirring the food to disperse the air pocket away from the blades."

The Abstract of the '021 Patent further provides that:

> After the pitcher is filled with the fluid, the plunger ... is positioned adjacent to and above the mixing blade assembly and maintained free of contact with the pitcher.  [T]he plunger ... prevents the formation of the air pocket in the fluid around the blade assembly.

This excerpt is the only reference in the specification to the claimed method.  The remainder of the specification is directed to a plunger apparatus.

The specification of the '021 Patent indicates the inventors envisioned several objects of their invention:  providing a plunger for a blender to prevent the formation of the dead air space around the mixing blades of the blender; providing a plunger that cannot interfere with the blades of the blender; providing a plunger that can be used without the constant attention of the user; and providing a plunger that can also be used to stir the food in the blender.

The parent application, the '892 application, contained 15 apparatus claims.  During prosecution of the '892 application, the examiner issued two office actions.  The first office action rejected all of the apparatus claims under 35 U.S.C. § 102 and § 103  for lacking novelty or for being obvious in light of the prior art.  The examiner explained that the prior art "clearly discloses the structure *and function* of the recited blender accessory." (emphasis added)

The inventors responded by amending certain claims, offering argument in support of the patentability of the claims, and presenting the declaration of inventor John Barnard.  In distinguishing their invention over the prior art, the inventors stated that there was a "fundamental distinction" between their invention, which involved placing a plunger in a

blender "<u>to prevent the formation</u> of an air pocket around the blades" (emphasis in original), and the prior art, which "relates only to stirrers, which at best, can only dislodge the air pocket once formed, only to have it form again – and again."  Mr. Barnard's declaration similarly explained that the "*purpose of* the [prior art stirrers] is to enable the user to stir the liquid in an attempt to dislodge the bubble or pocket *after it has formed*," which "requires the user's constant attention each time the pocket reforms." (emphases added)

The inventors further argued that, with their invention on the other hand, "the operator merely inserts the plunger and the air pocket can never form ...  No stirring or movement of the plunger is required.  In fact, it would be undesirable to move the plunger because then the air pocket could be allowed to form."  In order to "better distinguish ... stirring devices in general," the inventors amended their apparatus claims to indicate that the plunger "without moving, [] <u>prevents the formation</u> of the air pocket" as opposed to stirrers which must be moved "<u>after the formation</u> of the air pocket" to dislodge that air pocket.  (emphases in original)  The inventors continually emphasized this distinction.  In distinguishing their own prior art stir stick from the invention, they stated "it was not until the present invention that a device was developed which would prevent the problem from occurring in the first place without the need for operator attention.  Thus, the Vita-Mix tamper stick is *just another stirring device* which is moved in the fluid, which can contact the pitcher, *and which can only cure an existing problem and not automatically prevent it from occurring*." (emphases added)

In response to the office action, the inventors also added a method claim, Claim 16, which eventually issued as Claim 1 of the '021 Patent.  In discussing the added method claim, the inventors explained that "[b]ecause the *operation* of the plunger of the present application

8

is *completely distinguishable* from a stirring *operation*, Applicants have also added a method

claim ...  [T]he Applicants were the first to recognize that the air pocket problem was caused

by the initial formation of an air channel and that it could be solved by positioning a plunger

of a cross-sectional size approximating that of the air channel defining member adjacent to

and above the blades of the blender.  By maintaining the plunger free of contact from the

pitcher, the *formation* of the air pocket is *prevented*." (emphases added)

The examiner responded by again rejecting all of the apparatus claims.  The examiner

also indicated that the apparatus claims and the method claim represented two distinct

inventions and, as such, could not both be pursued in a single application.  The Court notes

that in so doing, the examiner stated that the "product as claimed can be used in a *materially*

*different* process [from the method claimed] such as a process wherein the accessory is used

to stir the contents of the pitcher or is used to tamp or force food material toward the blades,

i.e., the structure of the accessory can be utilized for purposes other than that of preventing

the formation of an air pocket."  This statement clearly indicates the examiner's

understanding that the method claim was directed to "preventing the formation of an air

pocket" and not the "materially different process" of stirring or tamping.  The examiner went

on to explain that the apparatus claims were being rejected because the *functional* limitations

of the claims, namely that the plunger can prevent the formation of the air pocket rather than

simply dislodge it by stirring, could not render the apparatus patentable over prior art patents

and products that disclosed the same structural elements:  "Hence, the allegedly new use of a

prior art blender accessory as an air pocket preventing device does not impart patentability to

the claims."  This is a further indication that the examiner understood the invention to be

9

limited to preventing an air pocket from forming.     In response, the inventors filed the '954

application, a continuation application, to pursue the method claim and abandoned the '892

application.  The same examiner examined the '954 application.  In the first and only office

action issued during prosecution of the '954 application, the examiner again clearly

distinguished the claimed method from the "materially different process" of stirring or

tamping.  In their response, the inventors did nothing to disabuse the examiner of this

understanding.  After amendments to the title and abstract to indicate that a method and not an

apparatus was now being claimed, and ministerial amendments to the method claim, the

examiner allowed the method claim to issue.

     The parties have identified five claim terms they deem must be construed by the

Court:  (1) preventing the formation of an air pocket; (2) an air channel of a cross-sectional

size defined by a member associated with the blades; (3) plunger; (4) adjacent to and above;

and (5) while maintaining the plunger free of contact with the pitcher.

1.    "preventing the formation of an air pocket"

     Plaintiff's Proposed Construction:  "preventing the formation of an air pocket"

     Defendant's Proposed Construction:  "throughout the mixing process (or while the

blades are rotating) the potential for the formation of an air pocket around the rotating blades

is eliminated before the air pocket can begin to form" and expressly excludes "stirring to

disperse, dislodge, or break-up an air pocket after it has begun to form"

     The Court's Construction:  "preventing the formation of an air pocket [around rotating

blades positioned in a pitcher of a blender] but not including a method of stirring to disperse,

dislodge, or break-up an air pocket after it has begun to form"

10

Plaintiff urges the Court to adopt the ordinary meaning of this phrase but then goes on to assert that the ordinary meaning of "preventing" includes eliminating an existing air pocket so long as it is eliminated before it becomes so large that it creates dead space around the blades.  Defendant, on the other hand, asserts that the word "preventing" must be construed to exclude methods that eliminate an existing air pocket, such as stirring, based on the doctrine of prosecution disclaimer.  Defendant also seeks to add a limitation requiring the method to be performed "throughout the mixing process (or while the blades are rotating)."  Plaintiff responds by arguing that there was no unambiguous disclaimer of claim scope during prosecution and that, in any event, the disputed term appears in the preamble of the claim and, thus, should not limit the scope of the claim.

The preamble will be relevant to the scope of the claim if it limits the claimed invention or is "necessary to give life, meaning, and vitality to the body of the claim."  *E.g.*, *MBO Labs., Inc. v. Becton, Dickson & Co.*, 474 F.3d 1323, 1330 (Fed. Cir. 2007) (holding that where the patentee provided a specific meaning for a term in the specification and the prosecution history, that term, which appeared in the claim preamble, was limited to the meaning given it by the patentee).

The Court finds that the term "preventing" in the preamble of Claim 1 is "necessary to give life, meaning, and vitality to the body of the claim."  First, the inventors repeatedly emphasized during prosecution that preventing the formation of an air pocket was fundamental to their invention and used this argument to distinguish their invention over the prior art.  *See In re Cruciferous Sprout Litigation*, 301 F.3d 1343, 1347 (Fed. Cir. 2002) (a preamble may be limiting if it recites an essential step or the inventor relied on the preamble

during prosecution to distinguish the claimed invention from the prior art).  Further, the term

"preventing" also appears in the body of the claim:  "thereby preventing the formation of an

air pocket."  "When limitations in the body of the claim rely upon and derive antecedent basis

from the preamble, then the preamble may act as a necessary component of the claimed

invention."  *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1306 (Fed. Cir. 2005).

        The Court also finds that plaintiff's proposed claim language is contrary to the plain

and ordinary meaning of "preventing."  To "prevent" something is to keep it from occurring

at all.  Plaintiff's position would expand the meaning of "preventing" beyond its ordinary and

customary meaning to include "eliminating" an air pocket that has already formed.  Plaintiff's

position finds no support in the intrinsic evidence.  First, plaintiff argues that there is a

difference between the "air pocket" and the "dead space" or the "air pocket around the

blades."  Plaintiff directs the Court to the following from the specification in an attempt to

establish this point:  "In the absence of the plunger accessory [], and in particular when

processing viscous fluids, such action may tend to form an air channel extending from the

blades to the top of the fluid much like a whirlpool. Eventually, an air pocket will form

around the blades which renders the blades ineffective for a total blending of the fluid."

These sentences, however, do not distinguish a nascent "air pocket" from an "air pocket

around the blades."  Instead, they distinguish the "air channel" from the "air pocket."  This

excerpt from the specification does not support plaintiff's position that "preventing" can also

include "eliminating."

        Plaintiff also argues that the inventors' statements during prosecution do not amount

to a "clear and unambiguous" disclaimer of stirring operations, because the prosecution

history directed to the apparatus claims cannot serve to limit the method claim of the '021 Patent.  However, the cases cited by plaintiff in support of this argument all involved instances where the words used in the method claims in dispute were different from the words in the earlier-prosecuted apparatus claims.  Such is not the case here.  The claim term "preventing the formation of an air pocket" appeared in the preamble of at least one of the independent apparatus claims of the '892 application.  Thus, any arguments made to the examiner defining the word "preventing" are relevant to the interpretation of the identical term that appears in Claim 1 of the '021 Patent.

During prosecution of the '892 application, the inventors presented argument to the examiner to overcome rejections based on prior art.  The inventors responded to all of the novelty rejections together:  "Turning now to the rejections based on prior art, ...  It is believed that these rejections are in error based primarily on a fundamental distinction between the present invention and the prior art."  In their remarks to the examiner, the inventors repeatedly emphasized that their invention was the *prevention* of the air pocket, which invention was "fundamentally" different from stirring to dislodge an already formed air pocket.  Nothing about those statements was ambiguous.

The inventors also made this distinction specifically in the context of the method claim:  "Because the *operation* of the plunger of the present application is *completely distinguishable* from a stirring *operation*, Applicants have also added a method claim." (emphases added)  The referred to "stirring operation" was defined elsewhere by the inventors as dispersing or dislodging an air pocket.  Accordingly, stirring operations were expressly and unambiguously disclaimed during prosecution.

Plaintiff also argues that the statement in the specification that the plunger "can also be utilized by the user as a stirring mechanism" requires the Court to adopt a contrary meaning.  The Court disagrees.  The Court must construe the claim terms in light of the specification and also the prosecution history.  While the specification may provide for multiple objects of the invention or broad meanings of claim terms, the inventors may also limit the meaning of those claim terms during prosecution.  *E.g.*, *Phillips*, 415 F.3d at 1317.  That is exactly what the inventors did here.

Finally, defendant seeks the addition of a limitation to this claim element, namely that the method be performed "throughout the mixing process (or while the blades are rotating)."  While, as a practical matter, it may make sense that the plunger must be present in the pitcher at all times during mixing to prevent the formation of an air pocket, defendant points to no evidence in the specification or prosecution history to so limit the claim.  Further, the claim already provides for a "method of preventing the formation of an air pocket around *rotating* blades."  (emphasis added)  Therefore, the Court finds it inappropriate to add defendant's proposed limitation to Claim 1.

In sum, the Court finds that the prosecution of the '892 application does serve to limit the term "preventing" as it appears in Claim 1 of the '021 Patent.  The Court agrees with defendant that plaintiff has disclaimed "stirring to disperse, dislodge, or break-up an air pocket after it has begun to form."  Because the Court needs no assistance in understanding the technology involved or the meaning of the terms at issue, the Court declines to consider the dictionary definitions provided by defendant.

2.        "an air channel of a cross-sectional size defined by a member associated with the

14

blades"

> Plaintiff's Proposed Construction:  "an air channel of a cross-sectional size defined by a member associated with the blades"

> Defendant's Proposed Construction:  "the cross-sectional size of the air channel is determined by the cross-sectional size of the member"

> The Court's Construction:  "an air channel of a cross-sectional size defined by a member associated with the blades"

Plaintiff again asks the Court to apply the ordinary meaning of this phrase.  Defendant asks the Court to substitute the word "determined" for "defined."

The Court agrees with plaintiff that this phrase should be construed to have its ordinary and customary meaning.  Nothing in the specification or prosecution history is to the contrary.  Defendant's arguments do nothing to persuade the Court that the word "defined" should be replaced by the word "determined."  The Court finds the dictionary definitions supplied by defendant are not helpful.

3.      "plunger"

> Plaintiff's Proposed Construction:  "a device that can be inserted into a blender"

> Defendant's Proposed Construction:  "an elongated device having a cross-sectional size that is approximately equal to the cross-sectional size of a member associated with the blades, which is inserted into a blender and positioned within the area where an air channel would otherwise form during blending" and "not a stirrer, i.e. not used in a stirring operation"

> The Court's Construction:  "a device that can be inserted into a blender"

Plaintiff argues that a "plunger" is any "device that can be inserted into a blender"

15

including a "stir stick" such as that used in defendant's  blenders.  Defendant argues that plaintiff disclaimed all "stirrers," including stir sticks.  Defendant also seeks a claim construction adding limitations to the claim term that would require the plunger to be "elongated," "having a cross-sectional size that is approximately equal to the cross-sectional size of a member associated with the blades," and "positioned within the area where an air channel would otherwise form during blending."  Defendant acknowledges that its arguments are all directed to the functionality and operation of the plunger (that is, to limitations on the claimed method) rather than to the structure of the claim term "plunger."

The Court finds that, while the inventors have disclaimed a *method* of stirring to break up an already formed air pocket, such a disclaimer is not equivalent to disclaiming the structure of a stirrer.  In fact, the parties have not identified any *structural* differences between a plunger and a stirrer.  Tellingly, during the prosecution of the '892 application, the examiner equated the structure of the prior art stirrers with that of the claimed plunger in rejecting the apparatus claims as anticipated by the prior art stirrers.  Further, the disclaimer of stirring *methods* is encompassed by the Court's construction of the term "preventing the formation of an air pocket," above.

Turning to the limitations defendant seeks to add to the term "plunger," defendant first argues the plunger must be "elongated."  In the specification, the plunger is not well-defined. It is described as having a "stop member," which is a member that would keep the plunger from falling into the blender and contacting the blades in the absence of constant user attention.  During prosecution, the inventors characterized the plunger portion and handle portion of the then-claimed apparatus as being "longitudinally extending members with the

16

stop member being positioned therebetween."  However, in doing so, the inventors were describing three claim elements that do not appear in Claim 1:  a plunger portion, a handle portion, and a stop member.  Because the intrinsic evidence lacks any clear and unambiguous characterization of the plunger as elongated, the Court declines to so limit the claim.

Defendant next suggests that the plunger must have a cross-sectional size approximating the cross-sectional size of the member associated with the blades.  This limitation already appears elsewhere in the claim and need not be imported into the term "plunger."

Defendant also asks the Court to require that the plunger be positioned within the area where an air channel would otherwise form during blending.  Claim 1 already contains a limitation with respect to the position of the plunger; it must be adjacent to and above the rotating blades.  The meaning of "adjacent to and above the rotating blades" is also disputed by the parties and construed below.  Therefore, the Court will address defendant's arguments regarding the position of the plunger below.

Finally, the Court finds no need to rely upon the dictionary definitions provided by defendant.

4.      "adjacent to and above"

Plaintiff's Proposed Construction:  "terminating at an elevation sufficient to not interfere with the rotating blades of a blender"

Defendant's Proposed Construction:  "at a location just above the rotating blades in the area where an air channel may form in the pitcher of a blender, without interfering with the rotating blades"

17

<u>The Court's Construction</u>:    "adjacent to and above"

Plaintiff contends that its proposed construction embodies the ordinary meaning of "adjacent to and above."  Consistent with its arguments made in connection with the "plunger" element, defendant argues that, as a practical matter, the plunger must be in the area where the air channel would otherwise form in order to perform the claimed method of preventing the formation of the air pocket around the mixing blades.

The term "adjacent to and above" appears only in Claim 1 and in the Abstract of the '021 Patent.  Claim 1 requires the plunger to be adjacent to and above *the rotating blades*.  The original apparatus claims, on the other hand, required the plunger to be "just above" the blade *assembly*.  The specification similarly indicates that the plunger is "just above" the blade assembly.  Several dependent apparatus claims required that the plunger also be "adjacent to" the blade assembly.

First, the Court finds that "above" carries its ordinary and customary meaning.  Because the claim requires that the plunger be above the rotating blades, the plunger of necessity cannot interfere with the blades.  This is consistent with plaintiff's proposed construction and the intrinsic evidence.  The Court also finds that, consistent with plaintiff's argument, "above" does not mean "just above."  In submitting the method claim for examination, the inventors chose to eliminate the word "just," which had appeared in their apparatus claims.  The examiner allowed the claim without comment on this element.  The Court cannot re-insert the word "just" into the claim without unambiguous evidence in the intrinsic record of the patent to support such a construction.

The Court next turns to the meaning of "adjacent to."  The plaintiff's proposed

18

construction ignores these two words.  Defendant's construction would have "adjacent to" interpreted as "in the area where an air channel may form in the pitcher of a blender, without interfering with the rotating blades."  As stated above, some of the apparatus claims did include a limitation that required the plunger to be adjacent to the blade assembly.  The method claim at issue, on the other hand, requires the plunger to be adjacent to the rotating blades.  This is not a distinction without a difference.  The blade assembly is distinct from the blades in that the blade assembly is the element that houses the air channel defining member.  The blades extend outward from the blade assembly.  Defendant argues that the air channel forms above the blade assembly.  So, defendant essentially seeks a construction of the claim that would require the plunger to be located adjacent to and above the blade assembly rather than the blades.

In support of its position, defendant argues that in order to practice the claimed invention and prevent the air pocket from forming, the plunger must be in the area where the air channel would form, *i.e.* adjacent to the blade assembly.  However, the intrinsic evidence does not unequivocally support such a construction.  The specification does state that the air channel is defined by the member associated with the blades and that the cross-sectional size of that air channel is defined by the cross-section of the member.  However, the inventors chose, in submitting their method claim, to indicate that the plunger was above "the rotating blades" rather than "the blade assembly."  And, it is not clear to the Court that the plunger could not close off the air channel and, thus, prevent the formation of the air pocket if it were positioned adjacent to and above the rotating blades.  To adopt defendant's proposed construction that the plunger be placed where the air channel would otherwise form might

19

unduly limit the claim.

Accordingly, the Court finds that "adjacent to and above the rotating blades" means just that. Resort to the dictionary definitions provided by defendant is unnecessary.

5.      "while maintaining the plunger free of contact with the pitcher"

Plaintiff's Proposed Construction:  "while maintaining the plunger free of contact with the pitcher"

Defendant's Proposed Construction:  "throughout the mixing process (or while the blades are rotating), no part of the plunger contacts the pitcher"

The Court's Construction:    "while maintaining the device free of contact with the pitcher"

This phrase has acquired its ordinary and customary meaning. Defendant asks the Court to require that the plunger not contact the pitcher "while the blades are rotating." But, the claim already requires the blades to be rotating. Thus, such a limitation need not be added to this claim element. The Court replaces the word "plunger" with the word "device" to be consistent with the earlier construction of the term "plunger." The dictionary definitions suggested by the defendant are unnecessary and not helpful to the Court.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion to strike is DENIED.

Claim 1 of the '021 Patent is construed to mean:

A method of preventing the formation of an air pocket around
          rotating blades positioned in a pitcher of a blender *but not including a method of stirring to disperse, dislodge, or break-up an air pocket after it has begun to form,*
the air pocket being created from an air channel of a cross-sectional
          size defined by a member associated with the blades,

comprising the steps of
 supplying a fluid into the pitcher, and
 positioning a *device that can be inserted into a blender*,
  having a cross-sectional size approximating the
   cross-sectional size of the member,
  adjacent to and above the rotating blades
  while maintaining the *device* free of contact with
   the pitcher
  thereby preventing the formation of an air pocket in
   the fluid around the rotating blades.


IT IS SO ORDERED.



      /s/ Patricia A. Gaughan
     PATRICIA A. GAUGHAN
     United States District Judge


Dated: 9/10/07

21