**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VITA-MIX CORPORATION, | ) | CASE NO. 1:06CV2622 |
| | ) | |
| Plaintiff/Counterdefendant, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | |
| | ) | |
| BASIC HOLDING, Inc. f/k/a | ) | |
| BACK TO BASICS PRODUCTS, INC., | ) | |
| FOCUS PRODUCTS GROUP, LLC, | ) | |
| FOCUS ELECTRICS, LLC, and, | ) | |
| WEST BEND HOUSEWARES, LLC | ) | |
| | ) | |
| Defendants/Counterclaimants. | ) | |

**DEFENDANTS' OPPOSITION TO VITA-MIX CORPORATION'S**
**MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' FIRST**
**COUNTERCLAIM AND AFFIRMATIVE DEFENSES OF PATENT INVALIDITY**

Defendants Basic Holding, Inc. f/k/a Back to Basics Products, Inc. ("Back to Basics"), Focus Products Group, LLC ("Focus Products"), Focus Electrics, LLC ("Focus Electrics") and West Bend Housewares, LLC ("West Bend") (collectively "Defendants") hereby submit this brief in opposition to Plaintiff Vita-Mix Corporation's ("Vita-Mix" or "Plaintiff") Motion for Summary Judgment on Defendants' First Counterclaim and Affirmative Defenses of Patent Invalidity Dkt. No. 125.

## TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ...........................................................................................1

II.   ARGUMENT .................................................................................................2

    A.    Vita-Mix's Present Motion for Summary Judgment Should be
Denied Because Genuine Issues of Material Fact Exist Concerning
the Validity of the '021 Patent in View of the Prior Art..........................4

        1.    The Prior Art Blender Patents Disclose Each and Every
Limitation of Claim 1 of the '021 Patent Alone or in
Combination..................................................................................4

        2.    Wayne, Jacobsen, Harris and Vita-Mix 3600/4000 Each
Anticipate as They Disclose Each and Every Claim
Limitation of the '021 Patent. ....................................................11

            a)    Wayne Discloses to One of Ordinary Skill Each and
Every Limitation of Claim 1 of the '021 Patent. ...........................13

            b)    Jacobsen Discloses to One of Ordinary Skill Each
and Every Limitation of Claim 1 of the '021 Patent.....................14

            c)    Harris Discloses to One of Ordinary Skill Each and
Every Limitation of Claim 1 of the '021 Patent. ...........................15

            d)    The Vita-Mix 3600/4000 Discloses to One of
Ordinary Skill Each and Every Limitation of Claim
1 of the '021 Patent.......................................................16

        3.    All of the Limitations of Claim 1 of the '021 Patent are
Disclosed in Wayne, Jacobsen, Harris, and Vita-Mix
3600/4000 Such that Claim 1 Would Have Been Obvious
to a Person of Ordinary Skill in the Blender Art. .....................17

        4.    Sufficient Evidence Exists that Claim 1 of the '021 Patent
is Invalid for Lack of Enablement to Create a Genuine
Issue of Material Fact for the Jury to Consider..........................22

            a)    The Opinion of Defendants' Expert that Claim 1 of
the '021 is Invalid for Lack of Enablement is
Presented by a Person Skilled in the Blender Art
and is Supported by Actual Information.......................................22

b)     Vita-Mix's Own Documents Demonstrate that Claim 1 of the '021 Patent is Invalid for Lack of Enablement and Creates a Genuine Issue of Material Fact Sufficient to Deny Vita-Mix's Motion for Summary Judgment...............................................................27

III.     CONCLUSION............................................................................................................30

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*AK Steel Corp. v. Sollac*,
    344 F.3d 1234, 1244 (Fed. Cir. 2003)...................................................................... 22

*Alza Corp. v. Myan Labs., Inc.*,
    464 f.3d 1286 (Fed. Cir. 2006) ............................................................................ 17

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
    314 F.3d 1313 (Fed. Cir. 2003)............................................................................... 5

*Beckman Instruments, Inc. v. LKB Produkte AB*,
    892 F.2d 1547 (Fed. Cir. 1989)...................................................................... 11, 17

*Bristol-Meyers Squibb Co. v. Ben Venue Laboratories, Inc.*,
    246 F.3d 1368 (Fed. Cir. 2001)............................................................................. 10

*Computer Docking Station Corp. v. Dell, Inc.*,
    2008 U.S. App LEXIS 5893 *16 (Fed. Cir. March 21, 2008) ........................... 2, 3

*Crown Operations Int'l, Ltd. v. Solutia Inc.*,
    289 F.3d 1367 (Fed. Cir. 2002)...................................................................... 26, 27

*Custom Accessories v. Jeffrey-Allan Indus.*,
    807 F.2d 955 (Fed. Cir. 1986).............................................................................. 10

*Helifix, Ltd. v. Blok-Lok, Ltd.*,
    208 F.3d 1339 (Fed. Cir. 2000)........................................................................ 6, 10

*In re Dembiczak*,
    175 F.3d 994 (Fed. Cir. 1999).............................................................................. 20

*In re Donohue*,
    766 F.2d 531 (Fed. Cir. 1985)........................................................................ 10, 11

*In re Fritch*,
    972 F.2d 1260 (Fed. Cir. 1992)............................................................................ 11

*In re Kotzab*,
    217 F.3d 1365 (Fed. Cir. 2000)............................................................................ 20

*Key Pharms. v. Hercon Labs. Corp.*,
    161 F.3d 709 (Fed. Cir. 1998)................................................................................ 5

*KSR Int'l. Co. v. Teleflex Inc.*,
  127 S.Ct. 1727 (2007) .......................................................................................... 18

*Lewmar Marine, Inc. v. Barient, Inc*.,
  827 F.2d 744 (Fed. Cir. 1987) ........................................................................ 1, 5

*Reading & Bates Constr. Co. v. Baker Energy Resources Corp.*,
  748 F.2d 645 (Fed. Cir. 1984) ............................................................................ 17

*Ruiz v. A.B. Chance Co.*,
  357 F.3d 1270 (Fed. Cir. 2004) ......................................................................... 17

Sandt Tech., LTD v. Resco Metal and Plastics Corp.,
  264 F.3d 1344 (Fed. Cir. 2001) ......................................................................... 21

*Springs Window Fashions L.P. v. Novo Indus., L.P.*,
  323 F.3d 989 (Fed. Cir. 2003) ....................................................................... 3, 17

*Standard Oil Co. v. American Cyanamid Co.*,
  774 F.2d 448 (Fed. Cir. 1985) ........................................................................... 10

*Stirick v. Dreamworks, LLC*,
  2008 WL 29443 * 6 ........................................................................................... 25

*Symbol Technologies, Inc. v. Opticon, Inc.*,
  935 F.2d 1569 (Fed. Cir. 1991) ......................................................................... 17

*TurboCare Division of Demag Delaval Turbomachinery Corp. v.
  General Electric Co.*,
  264 F.3d 1111 (Fed. Cir. 2001) ..................................................................... 4, 26

*Vanmoor v. Wal-Mart Stores, Inc.*,
  201 F.3d 1363 (Fed. Cir. 2000) ........................................................................... 3

## RULES AND STATUTES

35 U.S.C. § 102 ...................................................................................................... 4

35 U.S.C. § 103 ............................................................................... 1, 4, 16, 17, 19

U.S.C. § 112 ................................................................................................... 11, 21

## I.    INTRODUCTION

Plaintiff in its Amended Complaint has alleged that Defendants' blender products with stir sticks ("Accused Products") are capable of directly and indirectly infringing the only claim of United States Patent No. 5,302,021 (the "'021 patent"), method claim 1.  The invalidity of claim 1, as anticipated and/or obvious, is clear in light of the prior art and other factors such as the direct conflict between Vita-Mix's infringement positions taken in this litigation and its positions taken during prosecution to gain allowance of claim 1.  Vita-Mix's present motion concerning the validity of claim 1, on the other hand, should be denied because the evidence, when taken in the light most favorable to Defendants, shows that there are significant issues of material fact questioning claim 1's validity under anticipation, obviousness and enablement.

Indeed, comparing Vita-Mix's infringement contentions in this case to the prior art confirms that claim 1 of the '021 patent is invalid as anticipated.  It is well settled "[t]hat which would literally infringe if later in time anticipates if earlier than the date of invention."  *Lewmar Marine, Inc. v. Barient, Inc.*, 827 F.2d 744, 747 (Fed. Cir. 1987).  Moreover, if any one of the prior art blenders enables one of ordinary skill in the blender art to practice the method of claim 1, claim 1 is invalid as anticipated.  If not anticipated, however, claim 1 is invalid as obvious because "the differences between the subject matter [claimed] and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art" of blenders.  35 U.S.C. § 103.  To one of ordinary skill in the blender art, claim 1 is invalid as obvious because the prior art stir sticks and stirring operations Vita-Mix distinguished during prosecution[1] either alone or when considered in light of the prior art blender patent Wayne,[2] disclose each and every element of claim 1.

---

[1] Although some of the prior art relied upon by Defendants to prove invalidity of claim 1 was before the examiner during the prosecution of the '021 patent, this prior art is nonetheless material and relevant to the question of invalidity because the arguments concerning infringement Vita-Mix has made in this litigation are in direct contradiction to the arguments it made concerning the prior art stirring operations during the prosecution of the '021 patent to gain its allowance.

[2] The Wayne reference was not before the examiner during the prosecution of the '021 patent.

Finally, Vita-Mix's present motion should also be denied as to Defendants' enablement defense because the evidence of record has raised genuine issues of material fact that the '021 patent fails to sufficiently enable one of ordinary skill to practice method claim 1 without undue experimentation due to the numerous variables and factors that the '021 patent fails to disclose and take into account.

## II.    ARGUMENT

Despite this Court's claim construction order and opinion, Dkt. No. 81, Vita-Mix claims that method claim 1 can be infringed even if the stir sticks of the Accused Products are used in a stirring operation that contacts the pitcher.  Vita-Mix contends that the Court's claim construction did not hold that any stirring precludes a finding of infringement but only the specific act of stirring to "disperse, dislodge, or break up an air pocket after it has begun to form."  (Vita-Mix's Memorandum in Opposition to Defendants' Motion for Summary Judgment of Noninfringement and Memorandum in Support of its Cross-Motion for Summary Judgment of Infringement, Dkt. No. 114 at 18.)  Contrary to Vita-Mix's position, however, there is no question in this case that method claim 1 of the '021 patent does not include stirring operations. In fact, the Patent Examiner required that Vita-Mix include specific steps within claim 1 of the '021 patent to reflect its disclaimer of stirring operations including, *inter alia*, the step of "while maintaining the plunger [device] free of contact with the pitcher."  ('021 patent col. 4, ll. 34-36.) This Court has also affirmed this disclaimer, holding that "stirring operations were expressly and unambiguously disclaimed during prosecution."  (Dkt. No. 81 at 13.)

Vita-Mix attempts to ignore the full impact of its express and clear prosecution disclaimer of stirring operations because this disclaimer necessarily leads to a finding of noninfringement.  Exh. A,[3] *Computer Docking Station Corp. v. Dell, Inc.*, 2008 U.S. App LEXIS 5893 *16 (Fed. Cir. March 21, 2008) (affirming summary judgment of noninfringement as to the

---

[3] Unless otherwise indicated, all exhibits referenced herein are attached to the Declaration of Clinton E. Duke in Support of Defendants' Opposition to Vita-Mix Corporation's Motion for Summary Judgment on Defendants' First Counterclaim and Affirmative Defenses of Patent Invalidity.

accused laptops due to the patentee's disclaimer of laptops.)  During prosecution, Vita-Mix could not have been more clear – stirring operations cannot fall within the scope of method claim 1 because any movement or stirring of the plunger device would allow air pockets to form.  In Vita-Mix's own words the "prior art relates only to stirrers which, at best, can only dislodge the air pocket once formed. . . .  No stirring or movement of the plunger is required.  **In fact, it would be undesirable to move the plunger because then the air pocket could be allowed to form**."  (Exh. B, Prosecution History of the '021 Patent, March 31, 1992 Amendment A at p. 6 (emphasis added).)  Vita-Mix's clear and express disavowal of stirring operations is the very disavowal the Federal Circuit recently held precluded a patentee from claiming infringement. *Computer Docking Station, Corp., v. Dell, Inc.*, 2008 U.S. App LEXIS 5893 at *16; *Springs Window Fashions L.P. v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003) ("The public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent.  A patentee may not state during prosecution that the claims do not cover a particular device and then change position and later sue a party who makes that same device for infringement."); *Southwall Technologies, Inc. v. Cardinal IG Company*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers.")  Vita-Mix "cannot recapture claim scope disavowed during prosecution to prove infringement." *Computer Docking Station*, 2008 U.S. App. Lexis 5893 at ** 25 and 26 (citation omitted); *see also Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363 (Fed. Cir. 2000) (affirming summary judgment of invalidity of anticipation based upon plaintiff's infringement claims where the accused devices were made, sold and used prior to the critical date for the asserted patent).

If credence is given to Vita-Mix's infringement contentions, claim 1 must be held invalid as being anticipated by the stir sticks and stirring operations of the prior art that Vita-Mix clearly and unambiguously disavowed to obtain its allowance.  Vita-Mix's conflicting prosecution and

litigation positions concerning stirring operations sufficiently raise genuine issues of material fact such that disposal of the question of validity on summary judgment is improper.[4]

A.     **Vita-Mix's Present Motion for Summary Judgment Should be Denied Because Genuine Issues of Material Fact Exist Concerning the Validity of the '021 Patent in View of the Prior Art.**

As set forth in the Statement of Undisputed Facts of Defendants' Memorandum of Points and Authorities in Support of their Motion for Summary Judgment of Invalidity as Anticipated Pursuant to 35 U.S.C. § 102 and Obviousness Pursuant to 35 U.S.C. § 103, Dkt. No. 132, ("Defendants' Summary Judgment Brief"), the prior art[5] discloses each and every element of claim 1 of the '021 patent, either alone or in combination, thereby rendering claim 1 of the '021 patent invalid.  At the very least, there exist genuine issues of material fact that preclude granting Vita-Mix's instant motion.   Therefore, in responding to Vita-Mix's motion for validity, Defendants will only address those issues of law and fact raised in Vita-Mix's present motion rather than repeat the arguments made in Defendants' Summary Judgment Brief.  Defendants hereby incorporate all arguments and evidence set forth in Defendants' Summary Judgment Brief as if fully recited herein.

1.     **The Prior Art Blender Patents Disclose Each and Every Limitation of Claim 1 of the '021 Patent Alone or in Combination.**

Vita-Mix does not dispute that the prior art relied upon by Defendants qualifies as prior art under 35 U.S.C. § 102, including prior art U.S. Patent No. 2,757,909 to Wayne ("Wayne"), U.S. Patent No. 4,561,782 to Jacobsen ("Jacobsen"), U.S. Patent No. 3,346,029 to Harris ("Harris"), U.S. Patent No. 2,785,547 to Barros ("Barros") and the Vita-Mix 3600/4000 blenders.  Vita-Mix, however, disputes the sufficiency of Defendants' evidence concerning what this prior art does and does not disclose.  Specifically, Vita-Mix contends that through the deposition testimony of their technical expert, Dr. Majid Rashidi, Defendants admit that the claimed elements of "(1) preventing the formation of an air pocket; (2) a member associated with

---

[4]     On the other hand, if Defendants are found to infringe under Vita-Mix's infringement contentions, then Defendants' Motion for Summary Judgment of Invalidity must be granted.  See Dkt. Nos. 116 and 132.
[5]     A patent can be held invalid on its face, based solely on the patent's specification. *TurboCare Division of Demag Delaval Turbomachinery Corp. v. General Electric Co.,* 264 F.3d 1111 (Fed. Cir. 2001).

the blades; and (3) a plunger having a cross-sectional size approximating the cross-sectional size of the member" are not disclosed by Jacobsen, Harris and Vita-Mix 3600/4000. (Dkt. No. 125 at 8-10.) Likewise Vita-Mix argues that Defendants have admitted that the only claim element not disclosed by Wayne is "a plunger having a cross-sectional size approximating the cross-sectional size of the member." (Dkt. No. 125 at 11.) In making this assertion, Vita-Mix relies upon sound bites in an attempt to misconstrue Dr. Rashidi's deposition testimony and opinions when considered in their entirety.

Contrary to Vita-Mix's argument, Dr. Rashidi has not opined that these elements are not disclosed by the prior art. Indeed, his expert report is in direct contradiction of this argument. (Exh.C, December 17, 2007 Expert Report of Dr. Majid Rashidi ("Rashidi Report") at pp. 9-14.) In his expert report on invalidity, Dr. Rashidi opined that claim 1 of the '021 patent is anticipated by the Wayne, Jacobsen, Harris and Vita-Mix 3600/4000. In arriving at these opinions, Dr. Rashidi properly took the Court's claim construction and compared this construed claim to the prior art under Vita-Mix's very own infringement analysis as set forth in Vita-Mix's Preliminary Infringement Contentions, which were the only infringement contentions Vita-Mix had disclosed to Defendants at that time. *Key Pharms. v. Hercon Labs. Corp.,* 161 F.3d 709, 714 (Fed. Cir. 1998) (anticipation requires a two step process – (1) claim construction and (2) a comparison of the construed claim to the prior art); *Lewmar Marine, Inc.*, 827 F.2d at 747 ("[t]hat which would literally infringe if later in time anticipates if earlier than the date of invention."); *see also Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003) ("It is axiomatic that claims are construed the same way for both invalidity and infringement."). In making the exact comparisons and applying the same analysis to the prior art that Vita-Mix had made to the Accused Products in asserting infringement, Dr. Rashidi has opined that claim 1 of the '021 patent is invalid as anticipated. (Exh.C, Rashidi Report at pp. 9-14.) Therefore, any argument by Vita-Mix that Dr. Rashidi's anticipation analysis and opinions are insufficient is misplaced and demonstrates that Vita-Mix's infringement positions are inadequate and should be dismissed for the same reasons.

5

Further, Dr. Rashidi explained in his deposition, and in the very excerpts cited by Vita-Mix, that although the words "preventing the formation of an air pocket," "a member associated with the blades," and "a plunger having a cross-sectional size approximating the cross-sectional size of the member" are not explicitly found in Jacobsen, Harris, and the Vita-Mix 3600/4000, these prior art references do disclose each and every limitation of the claimed invention, are enabling, and describe the claimed invention sufficiently to have placed it in the possession of a person of ordinary skill in the filed of the invention. *Helifix, Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000). Dr. Rashidi's deposition responses are highlighted below:

> A: Again, none of these patents *explicitly talk* about equivalency or approximation of the cross-sectional sizes *but to a person of ordinary skill in the art, these are obvious*.
>
>                 ***
>
> A: [Jacobsen] doesn't, he doesn't, *but it [a member associate with the blades] is there, so for a person of ordinary skill in the art, they can see it [a member associate with the blades]*.
>
>                 ***
>
> A: I'm not saying that. *I'm saying for a person of ordinary skill in the art, they see that there is a member associated with the blade which is a hub diameter and there is a rod which they have the approximate cross-sectional sizes.*

(Dkt. No. 125 at 9-11, citing the January 25, 2008 Deposition of Majid Rashidi, Ph.D., P.E. at 94:21-95:12; 395:12-396:14 (emphasis added).) Contrary to Vita-Mix's interpretation, Dr. Rashidi did testify that the elements of a member associated with the blades and a plunger having a cross-sectional size approximating the cross-sectional size of the member are disclosed in the Wayne, Jacobsen, Harris references to a person of ordinary skill in the art. Dr. Rashidi further explained:

> Q: What does -- do you know what Wayne teaches with respect to the helical portion of the auger component? What's the purpose of that?
>
> A: Basically he's trying to create a positive pumping flow downward toward the blade and therefore, that's why I am asserting that these diameters are going to match the '021 patent in terms of cross-section because unless the auger diameter is large enough to contact a given air channel, it's not going to work and I'm sure the inventor of a device has thought of that already. So according to Wayne, the damage of the air channel was about this and the air

> channel is defined by the defining member so A equal to B, B equal to C,
> therefore, A's equal to B.

(Exh.D, January 25, 2008 Deposition of Majid Rashidi, Ph.D., P.E. ("Rashidi Dep.") at 404:19-

405:11.)  Further during his deposition, Dr. Rashidi explained and demonstrated that Jacobsen

discloses, specifically in Figure 2 of Jacobsen, a member associated with the blades and a

plunger having a cross-sectional size approximating the cross-sectional size of the member: "if

you look at the diameter of item 20, number 20, and if you look at the hub portion of the blade

that is the member associated with the blade and even by naked eyes they are very close to each

other so they are approximating each other."  (Exh. D, Rashidi Dep. at 392:22 – 393:3.)

Dr. Rashidi also explained that the spatula device of Harris discloses a device with an

effective cross-sectional size.

> Q: Take a look at figure 1 [of Harris].  Is it your opinion that the spatula 10, the
> bottom approximates the member associated with the blades?
>
> A: Actually it's larger than the hub portion of the blade so –
>
> Q: So it doe not approximate?
>
> A: It does not approximate, but if the allegation of the '021 patent is correct, this
> is supposed to work even better than Vita-Mix.
>
> ***
>
> A: Because the name of the game is to occupy space and actually this is what
> Vita-Mix has done, to make the plunger much larger in diameter compared to
> the wooden stick so that it occupies a space.  So if '021 -- if Vita-Mix is
> alleging the little disk at the bottom of the Back To Basics as approximating
> the size, if you make that size bigger it's  even better.  Here –
>
> ***
>
> A: I absolutely understand but what I'm saying is I am using a simple logic of
> inventors of Vita-Mix '021 patent.  They say we need something to occupy
> the space and this is the largest occupation you can find.  Even bigger.  In
> other words, if you go and interview the Vita-Mix patents, the larger you
> make the plunger, the better the, supposedly, solution is going to be.  There is
> no harm in increasing the diameter of the plunger.  The reason they don't
> increase it to the absolute limit is because they still need some room for
> material to be there.  So if the logic of '021 patent is correct, the best thing is
> to have a plunger which is three inches in diameter but there is no room for

> material anymore so they have found a happy medium of an optimum -- supposedly, somehow they attach it to the associated to the blade member and so forth.  Therefore, based on that argument, I'm saying that yes, here, you have something which works very well.

(Exh.D, Rashidi Dep. at 407:18-408:7;  408:12-20;  410:18-411:15.)    Dr. Rashidi further explained in his deposition that although the words "prevent the formation of an air pocket" are not expressly written in Harris, Harris does disclose this to a person of ordinary skill in the art through its structure and use to improve mixing inside a blender.  (*Id.*.D, Rashidi Dep. at 97:10-17.)

Vita-Mix's accusation that Dr. Rashidi admitted that Wayne does not disclose a plunger having a cross-sectional size approximating the cross-sectional size of the member is not only wrong but misleading.  Vita-Mix, to support this accusation, cites to a portion of Dr. Rashidi's deposition transcript where Vita-Mix's counsel was questioning Dr. Rashidi about the Jacobsen prior art and not Wayne.  (Dkt. No. 125 at 11.)  Indeed, as set forth in Dr. Rashidi's expert report and as explained during his deposition, Wayne not only specifically discloses a device having a cross-sectional size approximating a member, but Wayne also discloses the air pocket problem, its prevention, and all necessary structure and functionality claimed in the '021 patent.  (Exh.D, Rashidi Dep. at 143:24-145:8 (Wayne identifies the air pocket problem and puts an appropriately sized auger device adjacent to above the blades to occupy the source and location of the air pocket); 152:1-153:18 ("Q: Can you show me where in the Wayne patent Mr. Wayne implicitly knew that an air channel is defined at least in part by a member associated with the blades? A: By positioning his auger right adjacent and above the blade.  In other words, he got the same idea of, okay, then there's going to be a space there, an air channel, so let me just put that, and I may mention approximating the member, as you can see, so the size of that auger may touch the fluid content or blend content and pump it back in."); 153:19-162:9 (Wayne discloses an auger device that can be inserted into a blender that has a cross-sectional size that approximates the cross-sectional size of a member associated with the blades); 167:4-14 (disclosure of exact measurements are not necessary because claim 1 of the '021 patent requires only

"approximating"); 172:25-173:6 (Wayne is a one-to-one correlation with the design of claim 1 of the '021 patent); 179:13-185:6 (the auger device disclosed in Wayne must occupy enough space to fill the air channel otherwise it would be ineffective); 185:7-186:2 and 191:5-17 (auger device of Wayne is inserted adjacent to and above the rotatable blades); and, 193:22-24 ("Actually, my understanding from Wayne is it must be above the blade; otherwise, it wouldn't work.")).  Dr. Rashidi further explained:

> Q:  Sure.  Is it your opinion that the cross-sectional size of the auger component in Wayne does not have to approximate the cross-sectional size of a member associated with the blades for the blender device in Wayne to work?
>
> A:  It has to approximate because if it is too narrow it falls in the cavity of the air channel and it doesn't do anything.  It has to touch the fluid so it has to basically be large enough to contact the fluid and then pump the fluid downward.
>
> ***
>
> Q:  So you would agree with me that Wayne does not disclose or teach that the entire auger component has to be adjacent to and above the top tip portion of the rotating blade 28, right?
>
> A:  As I said to you previously, Wayne does not explicitly talk about adjacent and above, it does not talk about cross-sections.  Wayne teaches to have a device which basically fills up the void generated and it has an additional function of an auger which helps to pump the fluid downwards.  So if the sides of this auger are not touching the fluid, Wayne doesn't have an invention.  So nobody will sit down and make a blender according to Wayne and have the blender so narrow and so small in height, then it justifies the purpose.  So any person with ordinary skill in the art would make the item number 43 large enough lengthwise and cross-section-wise to be effective because, again, we are talking about a person with ordinary skill here.
>
> Q:  Take a look at your -- well, what's your opinion regarding whether Wayne is maintained -- the auger component Wayne is maintained free from contact with the pitcher?
>
> A:  Again, common sense.  It is not contacting because when I read Vita-Mix's patent, not contacting the pitcher means that they are based on the prosecution histories and even the statement of the patent it is supposed to extend in the middle so they are not -- they are saying that they are not using that as a stir stick, they are using it as a device that magically prevents air pocket formation.  So by not touching means staying in the center on a vertical axis

9

> pointing toward the blade and the same thing is happening here, in my opinion.

(Exh.D, Rashidi Dep. at 170:19-171:5; 195:2-196:17.)

Dr. Rashidi also explained in his deposition that a person of ordinary skill in the art would have possessed the knowledge and understanding of an air pocket, its formation, source, location and its prevention because Wayne had dedicated this disclosure to the public 38 years before the '021 patent even issued.  (Exh. D, Rashidi Dep. at 98:11-15.)  *Custom Accessories v. Jeffrey-Allan Indus.*, 807 F.2d 955, 962 (Fed. Cir. 1986) ("The person of ordinary skill is a hypothetical person who is presumed to be aware of all the pertinent prior art.") (*citing Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985).)  "To be anticipating, a prior art reference must disclose 'each and every limitation of the claimed invention[,] . . . must be enabling[,] and [must] describe . . . [the] claimed invention sufficiently to have placed it in the possession of a person of ordinary skill in the filed of the invention.'"  *Helifix, Ltd. v. Blok-Lok, Ltd*., 208 F.3d 1339, 1346 (Fed. Cir. 2000) (citation omitted).

Therefore, contrary to Vita-Mix's argument, Wayne makes clear, that a person of ordinary skill in the art would have possessed an understanding and recognition of the air pocket problem and its cause.  Thus, Jacobsen, Harris and the Vita-Mix 3600/4000 would be anticipating because "a person of ordinary skill in the art would understand [these prior art references] as disclosing [the claimed enabling structure and functionality] and if such a person could have combined the [prior arts'] description of the invention with his own knowledge to make the claimed invention."  (*Id.* at 1347; *see also Bristol-Meyers Squibb Co. v. Ben Venue Laboratories, Inc.*, 246 F.3d 1368, 1379 (Fed. Cir. 2001) ("Although anticipation requires a showing of each limitation of a claim in a single reference, we looked to Lincoln and another reference only 'to show that the claimed subject matter, as disclosed in Nomura, was in the public's possession.'" (quoting *In re Donohue*, 766 F.2d 531, 534 (Fed. Cir. 1985).)  Here the "preventing the formation of an air pocket" was in the public's possession through Wayne.  (*Id.*) The evidence of record further supports this as Dr. Rashidi explained during his deposition that

Wayne recognizes and discloses the very air pocket problem Vita-Mix told the Patent Examiner during prosecution was absent from the prior art to overcome the Patent Examiner's anticipation rejection based on the fact that Jacobsen discloses all of the necessary enabling structure and functionality of the '021 patent.  (Exh. D, Rashidi Dep. at 93:10 – 95:13.)  Further, Dr. Rashidi explained:

> A: What Wayne teaches, first of all, it identifies the problem that Vita-Mix asserts that they were the first one to understand about this deleterious air pocket.  Wayne talks about sizable bubbles which may get involved with the blender and make the blade inefficient so he tries to resolve that by putting a device above and adjacent to the rotating blades and basically solve the problem.

(Exh. D, Rashidi Dep. at 136:19-137:5; also 201:11-202:7 (the Wayne auger is maintained free of contact with the pitcher); 203:19-205:3 (Wayne's "drawings . . . very vividly shows a person with ordinary skill what to do.").)  Therefore, one of ordinary skill in the blender art would know that the enabling structure of Wayne, Jacobsen, Harris, and the Vita-Mix 3600/4000 could be used in accordance with method claim 1.  *See In re Donohue*, 766 F.2d at 534 ("Therefore, the anticipation rejection based on [the three separate pieces of prior art] Nomura, Lincoln, and Wagner] is proper.")  Finally, even a simple review of Wayne, Jacobsen, Harris, and Vita-Mix 3600/4000 demonstrates the presence of the claimed elements in each of these prior art references.

### 2.  Wayne, Jacobsen, Harris and Vita-Mix 3600/4000 Each Anticipate as They Disclose Each and Every Claim Limitation of the '021 Patent.

"It is well settled that a prior art reference is relevant for all that it teaches."  *In re Fritch*, 972 F.2d 1260, 1264 (Fed. Cir. 1992) (*citing Beckman Instruments, Inc. v. LKB Produkte AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989).  Vita-Mix argues that the Wayne prior art relied upon by Defendants cannot be used to invalidate the '021 patent because it is not enabling.  Vita-Mix attempts to make this argument based upon Dr. Rashidi's opinion that the '021 patent is non-enabling and invalid under 35 U.S.C. § 112.  As discussed more fully below, Dr. Rashidi has opined that the '021 patent fails to enable one of ordinary skill in the art to practice the method

11

of claim 1 as it fails to account for and address the numerous variables that define the characteristics of the air channel and formation of an air pocket.  Dr. Rashidi was clear in his deposition testimony that to the extent the '021 patent is not enabling so is the prior art.  Indeed, the very passage of Dr. Rashidi's deposition transcript that Vita-Mix relies upon to support its argument explains this, and in fact shows that Vita-Mix's own attorney understood this argument in the alternative:

> Q:     So based on the Wayne patent what it discloses, you don't believe today as we're sitting here, and <u>especially compared to Vita-Mix's '021 patent</u>, that the Wayne patent itself is even enabling; is that accurate?

> A:     That is accurate – Wayne *may* not work either.  In other words, in my opinion, <u>Vita-Mix does not work and Wayne *may* not work either</u>.

(Exh. D, Rashidi Deposition at 146:4-13 and 146:20-147:2.)   Vita-Mix's reliance on this testimony is misplaced as Dr. Rashidi has opined that the '021 patent is non-enabling, and if not enabled invalid as anticipated in view of Wayne.  Dr. Rashidi has opined that Wayne anticipates the '021 patent because it discloses each and every claim limitation of the '021 patent including the prevention of an air pocket through the positioning of a device, the device having a cross-sectional size approximating the cross-sectional size of a blade associated member, adjacent to and above rotating blades.  Therefore, if the '021 patent lacks enablement Wayne may also lack enablement as it discloses at least each and every disclosure of the '021 patent.  Therefore, if the '021 patent enables one of skill in the art to practice the claimed invention, so would Wayne.  In his deposition, Dr. Rashidi further explained this distinction that if the '021 patent is enabling then it would be invalid as anticipated by Wayne, and on the other hand, if the '021 patent is non-enabling then Wayne would be as well as it only discloses what the '021 patent discloses. (Exh. D, Rashidi Dep. at 145:9-17.)  So in attempting to defeat Defendants' invalidity arguments by claiming that the prior art that discloses each and every limitation of the '021 patent is non-enabling, Vita-Mix necessarily concedes that the '021 patent does not enable the practicing of the claimed method.

The prior art references of Wayne, Jacobsen, Harris, and Vita-Mix 3600/4000 on their face disclose the enabling structure Vita-Mix claims is necessary to infringe method of claim 1. Comparing these prior art references to the infringement analysis Vita-Mix uses to claim Defendants infringe shows that claim 1 is invalid as anticipated. Further, Vita-Mix alleges that the Accused Products are capable of infringing because they are used in a "Default Infringing Manner (or position)." (Dkt. No. 114 at 10.)[6] This so-called default position, however, is also present in the prior art.

### a) Wayne Discloses to One of Ordinary Skill Each and Every Limitation of Claim 1 of the '021 Patent.

U.S. Patent No. 2,757,909 issued to Wayne on August 7, 1956, ("Wayne"). (Exh. E at p. 1.) Wayne was not before the patent examiner during the prosecution of the '021 Patent. (Exh. F, '021 patent at 1.) The specification of Wayne specifically identifies the air pocket problem addressed by the '021 Patent: "An air bubble or pocket tends to form directly above the **blades** of the mixer in these circumstances [mixing high viscous fluids] . . . ." (Exh. E, 1: 22-39.) Wayne discloses a method for preventing the formation of an air pocket: "[t]hus the new **agitator** effectively prevents the formation of any sizeable air bubbles in the liquid. . . ." (Exh. E, 1:33-39.) Wayne discloses supplying a fluid into the pitcher. (Exh. E, 1:19-39; 2:39-41; 2:47-48; 2:65-69; 3:16-17).) Wayne



discloses a **device, an agitator**, designated as number 43, depicted in Figure 1[7] reproduced

---

[6] Dr. Traylor, Plaintiff's alleged survey expert, originally titled one of his four classifications "let the stir stick spin" because of how the stir stick when not held voluntarily spins around the inside of the pitcher when not being held by a user. In an effort to mischaracterize what Dr. Traylor observed and to manipulate Dr. Traylor's report, counsel for Vita-Mix required that Dr. Traylor change his initial classification of "let the stir stick spin" to "didn't hold the stir stick."

[7] This illustration, which is a portion of Figure 1 of Wayne, has been supplemented with color to highlight certain structures. The color of the highlighted structures corresponds to the color of the highlighted text that refers to these

above, that is inserted into a blender and positioned adjacent to and above rotatable blades. (Exh. E, Figs. 1-3; 2:35-41.)  The agitator device of Wayne has a cross-sectional size that approximates the cross-sectional size of **a member associated with the blades**. (*Id.*)  The agitator device of Wayne is maintained free from contact with the pitcher during use.  (*Id.*, Figs. 1 and 2; 2:19-21.)  In use, the Wayne invention "prevents the formation of any large gas bubble in the liquid above the **blades**, and thus assures a continuous pattern of liquid circulation in the container."  (*Id.*, Fig. 1; 2:38-41.)  As shown in Figure 1 and described in Wayne, the agitator device is always maintained and used in Vita-Mix's so-called "Default Infringing Manner (or position)."

       **b)**    **Jacobsen Discloses to One of Ordinary Skill Each and Every Limitation of Claim 1 of the '021 Patent.**

U.S. Patent No. 4,561,782 issued to Jacobsen ("Jacobsen") on December 31, 1985.  (Exh. G, Jacobsen Patent at p. 1.) Jacobsen discloses a cylindrical **device that is inserted into a blender** and positioned adjacent to and above **rotatable blades**.  (Exh. at p. G, Fig. 2.)  It also discloses a **member associated with the blades** with a cross-sectional size approximating the cross sectional size of the **device**.  *Id.*  Further, as illustrated in figure 2 of Jacobsen and reproduced to the right, the **device** can certainly be maintained free of contact with the sides of the pitcher and is even shown in such a position.  (Exh. G, Fig. 2, and 2:61-65; 4:12-16.)



During the prosecution of the '021 patent, the Patent Examiner found that Jacobsen anticipated the then pending claims because it disclosed all of the enabling structure and

---

structures.  Similar color-coded referencing is used to identify certain structures disclosed in other prior art references discussed below.

functionality Vita-Mix was attempting to claim.  (Exh. B, January 21, 1993 Office Action at pp.

3-5.)  Jacobsen  specifically discloses:

> a **tamping and stirring rod** for use in conjunction with a receptacle of a food and beverage blender wherein the **tamping and stirring rod** is loosely coupled to the top cover of the receptacle in such a manner that it **can contact the sidewalls of the receptacle** without being able to contact the rotating **blades** thereof.

(Exh. G, Jacobsen Patent 1:7-15 (emphasis added).)  Also evident from this paragraph is that

Jacobsen's **stir stick** is positioned in the blender adjacent to and above the **blades** and does not

necessarily contact the pitcher. (*Id.* at 2:61-65; 4:12-16 (emphasis added).)  Therefore, Jacobsen

also discloses Vita-Mix's so-called "Default Infringing Manner (or position)."  This structural

and spatial relationship is also shown in Fig. 2.  Jacobsen further discloses the step of supplying

a fluid as it is specifically directed to a "*beverage* blender."  (*Id*. at p. 1.)

During the '021 Patent's prosecution, the Patent Examiner stated that "[t]he Jacobsen

accessory could obviously be used in the manner set forth in the claims, i.e., out of contact with

the sidewalls and remaining stationary."  (Exh. B, January 21, 1993 Office Action at p. 7.)  To

overcome this anticipation rejection Vita-Mix took the position that "[s]ince no one prior to the

Applicants recognized the cause of the [air pocket] problem, no one could possibly have

considered the method for its solution and thus [method] claim 16 should clearly be patentable."

(Exh. B, March 31, 1992 Amendment A at p. 8.)  As discussed above, a person of ordinary skill

would have recognized the cause of the air pocket problem because Wayne had previously

disclosed this to the public.  Therefore, Jacobsen discloses to one of ordinary skill in the art the

method for the air pocket solution contrary to Vita -Mix's prosecution arguments.

**c)**     **Harris Discloses to One of Ordinary Skill Each and Every Limitation of Claim 1 of the '021 Patent.**

Harris also discloses structure that would enable one of ordinary skill in the art to practice

the method of claim 1.  Harris discloses a **spatula** that is positioned in the blender container

adjacent to and above **blades** and does not necessarily contact the pitcher.  (Exh.H, at p. 1 Figure

1.)  Figure 1 of Harris, reproduced below, discloses a **spatula** whose cross-sectional size

15

approximates that of **a member associated with a blade** positioned adjacent to and above **rotatable blades**.  As further evidenced from Figure 1, is that the **spatula** could be maintained free of contact with the blender's pitcher.  Harris discloses that the **spatula** is used "for tamping and stirring food as it is processed in a conventional electrically driven food blender."  (Exh.H, 1:11-12.)



FIG. 1

> **d)** **The Vita-Mix 3600/4000 Discloses to One of Ordinary Skill Each and Every Limitation of Claim 1 of the '021 Patent.**

Vita-Mix's 3600/4000 also discloses structure that would enable one of ordinary skill in the art to practice the method of claim 1. Vita-Mix's 3600/4000 blender and Recipes & Instructions include a **tamper** that is positioned in the blender container adjacent to and above the **blades** and does not necessarily contact the pitcher.  (Exh. I, Vita-Mix 3600/4000 Recipes & Instructions, at p. 12.) Diagram 2 of The Versatile Vita-Mix user manual, reproduced to the right, also discloses a **tamper or stir stick** whose cross-sectional size approximates that of **a member associated with a blade** positioned adjacent to and above **rotatable blades** and free of contact with the blender's pitcher.  As further depicted in Diagram 2, the Vita-Mix 3600/4000 also discloses the **tamper or stir stick** in the so-called "Default Infringing Manner (or position)."



Diagram 2-Tamper in container

As the United States Court of Appeals for the Federal Circuit has unquestionably articulated "[t]he public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent.  A patentee may not state during prosecution that the claims do not cover a particular device and then change position and later sue a party who makes that same device for infringement."  *Springs Window Fashions L.P. v. Novo Indus., L.P.*,

16

323 F.3d 989, 995 (Fed. Cir. 2003).  Therefore, if infringement is found against the Accused

Products which employ stir sticks in a stirring operation, claim 1 should be found invalid as

anticipated.  At the very least, there exists sufficient issues of material fact concerning whether

claim 1 of the '021 patent is anticipated such that Vita-Mix's present motion should be denied.

> **3.      All of the Limitations of Claim 1 of the '021 Patent are Disclosed in
> Wayne, Jacobsen, Harris, and Vita-Mix 3600/4000 Such that Claim 1
> Would Have Been Obvious to a Person of Ordinary Skill in the
> Blender Art.**

Claim 1 is invalid as obvious, because "the differences between the subject matter [of

claim 1] and the prior art [of Wayne, Jacobsen, Harris and Vita-Mix 3600/4000] are such that the

subject matter as a whole would have been obvious at the time the invention was made to a

person having ordinary skill in the art to which said subject matter pertains."  35 U.S.C. § 103.[8]

As demonstrated above and in Defendants' own motion for summary judgment of invalidity,

Dkt. No. 132, the prior art contains and discloses each and every limitation of claim 1 of the '021

patent.  At the very least, when all justifiable inferences are drawn in Defendants' favor, there

exist genuine issues of material fact that preclude summary judgment.

Even if it is determined that Wayne is not enabling and the '021 patent is, Wayne may

still be used for the purpose of determining obviousness under 35 U.S.C. § 103.  *Symbol

Technologies, Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1578 (Fed. Cir. 1991) ("[A] non-enabling

reference may qualify as prior art for the purpose of determining obviousness under § 103.")

(*citing Reading & Bates Constr. Co. v. Baker Energy Resources Corp.*, 748 F.2d 645, 652 (Fed.

Cir. 1984) and *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir.

1989) ("Even if a reference discloses an inoperative device, it is prior art for all that it

teaches.")).

Contrary to Vita-Mix's argument, a combination of all five references is not needed to

reach an obviousness determination of claim 1 of the '021 patent.  For example, if Jacobsen is

---

[8] "Obviousness is a question of law, reviewed *de novo*, based upon underlying factual questions which are reviewed
for clear error."  *Alza Corp. v. Myan Labs., Inc.*, 464 f.3d 1286, 1289 (Fed. Cir. 2006) (citing *Ruiz v. A.B. Chance
Co.*, 357 F.3d 1270, 1275 (Fed. Cir. 2004)).

only missing the disclosure of the air pocket problem, as one of the of the Vita-Mix inventors declared was the case at the time of the invention claimed in the '021 patent, then combining Jacobsen with Wayne which does discloses the air pocket problem would render claim 1 invalid as obvious as all the limitations of claim 1 would have been disclosed to one of ordinary skill in the art. Likewise, any combination of two or more of the prior art references that will satisfy each of claim 1's limitations would invalidate claim 1 as obvious.

Vita-Mix's arguments concerning "motivation to combine" the prior art are not supported by law or the evidence of record. Vita-Mix's analysis of Defendants' counterclaims and defenses of obviousness is an attempt to apply the "[r]igid preventative rules that deny fact finders recourse to common sense" which the Supreme Court found is "neither necessary under [Supreme Court] case law nor consistent with it." *KSR Int'l. Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1742-43 (2007). The Supreme Court in *KSR* stated that "[t]he obviousness analysis cannot be confined by a formalistic conception of the words teaching, suggestion, and motivation, or by overemphasis on the importance of published articles and the explicit content of issued patents." *KSR International Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1741 (2007). "Under the correct analysis," the Supreme Court continued, "any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed." *Id.* at p. 1742. Further, the Supreme Court stated that, according to common sense, "familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.* Dr. Rashidi's opinion on combining the prior art references is in line with this precedent.

Again Vita-Mix attempts to misrepresent Dr. Rashidi's opinions and explanations for his combination of the prior art references for purposes of obviousness. Dr. Rashidi's report on this point shows that his opinion is neither "a conclusory or inappropriate statement," as Vita-Mix purports, under the Supreme Court's holding in *KSR*. In his report, Dr. Rashidi opined:

As to the motivation to combine, I have been instructed and understand that Supreme Court precedents "make clear, however, the analysis need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ."  *KSR*, 127 S. Ct. at 1741. "Under the correct analysis, any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed."  Id. at p. 1742.

As discussed above, the '021 Patent addresses the need of "preventing the formation of an air pocket in a blender."  This need was clearly known in the field of blender manufacture, design and operation at the time of the claimed invention as it is expressly addressed in Wayne.  Wayne clearly disclosed this problem by stating that "[a]n air bubble or pocket tends to form directly above the blades of the mixer in [circumstances when the mixer is used with liquids of relatively high viscosity] and prevents much of the liquid in the container from circulating downwardly through the mixing blades in an efficient manner."  (Exh. 64.)  The device positioned adjacent to and above the blades that is disclosed in Wayne "effectively prevents the formation of any sizeable air bubbles in the liquid and sets up a constant pattern of circulation."  (*Id.*)  By disclosing and addressing the very problem the '021 Patent claims to address, and which Vita-Mix stated during the prosecution of the '021 Patent did not exist prior to Vita-Mix's discovery, Wayne provides a reason and motivation for one of ordinary skill in the relevant art to combine the elements of the prior art references discussed above in the manner claimed by the '021 Patent.

As discussed above, all of the elements of the '021 Patent are present in the relevant prior art.  One of ordinary skill in the relevant art would be led to combine these elements in the manner claimed in the '021 Patent by Wayne, which identifies the problem of an air pocket forming around the rotating blades of a blender and teaches the positioning of a device adjacent to and above the blades to solve this problem.  Wayne also discloses a device that is maintained free of contact with the pitcher while the blades are rotating.

Jacobsen, Harris, Barros, and the Vita-Mix 3600 and 4000 also disclose a number of devices that are inserted or positioned in a pitcher of a blender from the top.  Jacobsen, Harris, Barros and the Vita-mix 3600 and 4000 also teach that these devices can have substantial cross-sectional sizes and structure that cause the devices to be maintained free of contact with the pitcher.  One of ordinary skill in the relevant art would find the method claim of the '021 Patent obvious in light of that which is disclosed in the prior art.

(Exh. C, Rashidi Report at pp. 22-24.)

Additionally, Vita-Mix argues that Dr. Rashidi's obviousness opinions are founded upon "hindsight" because he considered Vita-Mix's arguments and statements made during the prosecution of the '021 patent.  Contrary to Vita-Mix's arguments, Dr. Rashidi's obviousness opinion is not founded upon hindsight.  Section 103 of the patent statute states that the

obviousness inquiry must take place "at the time the invention was made."  "A critical step in analyzing the patentability of claims pursuant to section 103(a) is casting the mind back to the time of invention, to consider the thinking of one of ordinary skill in the art, guided only by the prior art references and the then-accepted wisdom in the field."  *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000) (*citing In re Dembiczak*, 175 F.3d 994, 999 (Fed. Cir. 1999).  In the present case, "casting the mind back to the time of the invention, to consider the thinking of one of ordinary skill in the art" is made simple as one of the named inventors, John K. Barnard, submitted a declaration during the prosecution of the '021 patent.  (Exh. B, October 26, 1992 Declaration of John K. Barnard under 37 C.F.R. §1.132.)  In this declaration, Mr. Barnard explained that the problem Vita-Mix faced at the time of, and/or before, the invention of the '021 patent was the formation of air pockets and the prevention of their formation rather than curing them after they had begun to form.  Mr. Barnard specifically declared:

> 6.    Despite these shortcoming [of stir sticks], no one at Vita-Mix Corporation or elsewhere during all of these years ever anticipated the benefits of utilizing a properly sized plunger to prevent the formation of the bubble in the first place.
>        . . .
> 10.   For many, many years we, at Vita-Mix Corporation, have been faced with this problem and despite working with these blenders on a daily basis and being unhappy with the tamper stick solution, until recently it never occurred that the solution to the problem is not to cure it but rather prevent it in the first place using a properly sized plunger to protect the blades from being enveloped in an air pocket.

(*Id.* At ¶¶ 6, 10.)  These statements and their use during prosecution show what was happening at the time or before the invention of the '021 patent and not after (hindsight) as Vita-Mix argues. Again, Vita-Mix attempts to hide from its prosecution statements.  Therefore, because the prosecution recorded what Vita-Mix considered to be the need or problem in the blender field at the time or before the invention of the '021 patent, Dr. Rashidi's acknowledgement of the prosecution is not hindsight but the type of analysis the Supreme Court had in mind in *KSR*: "any need or problem known in the field of endeavor at the time of invention and addressed by the

20

patent can provide a reason for combining the elements in the manner claimed." *KSR*, 127 S.Ct. at 1742. Accordingly, Dr. Rashidi's opinion of obviousness is not based upon hindsight, or at the least when viewed in the light most favorable to Defendants raises questions of material fact sufficient to deny Vita-Mix's motion for summary judgment.

Vita-Mix's motion should further be dismissed because in combination, Wayne, Jacobsen, Harris, and Vita-Mix 3600/4000 disclose the invention of the '021 patent. For example, in *Sandt Tech., LTD v. Resco Metal and Plastics Corp.*, 264 F.3d 1344, 1348 (Fed. Cir. 2001), the Federal Circuit affirmed the district court's ruling on summary judgment that certain claims were invalid as obvious. The claims were directed to the method of attaching a protective metal plate to a coin operated pay phone. *Id.* at 1354-55. The claimed method required a threaded stud and nut attachment of the protective metal plate. *Id*. The prior art method simply welded the protective plate to the phone. *Id*. The Federal Circuit held "that the district court correctly concluded that the use of the threaded studs would have been an obvious substitution for welding. *Id*. The Federal Circuit further held that based upon "evidence that the use of such studs in the context of the telephone housings was common . . . and [the prior art's] cover in fact used threaded studs to mount the push button dial assembly . . . a reasonable jury could not conclude that the use of the studs was nonobvious." *Id*. at 1355. In the present case, like in *Sandt Tech*, the stir sticks of the prior art could be used and in fact disclose such use of the so-called "Default Infringing Manner (or position)." Therefore, when viewed in the light most favorable to Defendants, Vita-Mix's present motion must be denied because sufficient issues of material fact are raised due to Vita-Mix's clear disavowal of stirring operations and the prior art's disclosure of all of the claimed elements of the '021 patent including Vita-Mix's so-called default position.

4.    **Sufficient Evidence Exists that Claim 1 of the '021 Patent is Invalid for Lack of Enablement to Create a Genuine Issue of Material Fact for the Jury to Consider.**

In its original and amended answer and counterclaim, Defendants' have pled the defense and counterclaim that the '021 patent is invalid because it lacks enablement as required by 35 U.S.C. § 112. (Dkt. No. 11 at 9 and 11; Dkt. Nos. 40, 50, 76, and 86 at 10 and 13.)   The "enablement requirement is satisfied when one skilled in the art, after reading the specification, could practice the claimed invention without undue experimentation." *AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1244 (Fed. Cir. 2003).   The '021 patent purports to claim a "method of preventing the formation of an air pocket around rotating blades positioned in a pitcher of a blender, the air pocket being created from an air channel of a cross-sectional size defined by a member associated with the blades . . . ." ('021 patent, 4:27-31.)   In this case, claim 1 of the '021 patent is invalid for lack of enablement because it fails to disclose and account for numerous critical variables that affect the cause and formation of air pockets in blenders that must be addressed before an air pocket can be prevented as the '021 patent claims.

a)    **The Opinion of Defendants' Expert that Claim 1 of the '021 is Invalid for Lack of Enablement is Presented by a Person Skilled in the Blender Art and is Supported by Actual Information.**

The only disclosure provided by the '021 patent addressing the size and shape of the air channel or vortex, specifically the cross-sectional size of the air channel, is that it is "defined by a member associated with the blades."  Contrary to the '021 patent's disclosure, however, there are a multitude of variables that define the properties and/or existence of an air channel.  (*See* Exh. B, January 21, 1993 Office Action at pp. 6-7.)   In his expert report, Dr. Majid Rashidi explains that the '021 patent is not enabling as it fails to account for the other variables that define the formation and properties of the air channel such as the type and density of fluids, the presence and ratio of suspended solids, the power of the blender's motor, the speed of the rotation of the blades, the mixing blade design, and the size and shape of the pitcher to name a few.  (Exh. C, Rashidi Report at p. 27-30.)   The '021 patent does not address any of these

22

variables and one skilled in the art would not be able to practice the invention claimed in the '021 patent without undue experimentation.  (*Id*.)

Dr. Rashidi also explained the bases for his enablement opinion during his deposition. Dr. Rashidi testified that he used and observed the operation of one of Vita-Mix's blenders that Vita-Mix claims is covered by the '021 patent.  Dr. Rashidi explained:

> As I said, my very first tests that I asked to do and I did it myself in Calfee was to just observe the behavior of the Vita-Mix blender when I put pure water in it.  So I was kind of on the big picture just to see how the fluid is turned around because when you have a pitcher which is a square cross-section versus a pitcher that is round in cross-section, any other things can happen.  Some of the shortcomings of the '021 patent is this:  They only talk about two very simplistic matters and they are silent about many other important issues.  So I was just trying to demonstrate that if you change the RPM, the channel changes; if you have a round pitcher versus square pitcher in cross-section, things are different. So I was on a very preliminary domain or stage.
>
> So I did not make any thick smoothie or anything up to March 14th so it was just pure water to demonstrate that the air channel -- one of the most important factors is the RPM of the blade.  I was just demonstrating -- because I concentrated -- with all due respect, Mr. Robert Aycock is not a physicist or engineer so I was demonstrating to him that when you read these patents, don't get tangled with the legal language.  Just look at the RPM.  Look at -- if you increase the RPM, the channel grows; if you have very low RPM, the channel's just a little dip and it never gets to the blade.  So RPM is one of the most important factors in the definition of the size of the channel and blah, blah.  So I was kind of at this very preliminary stage.

(Exh.D, Rashidi Dep. at 43:3-44:13; also 44:14-45:6.)  As this testimony shows, Dr. Rashidi's opinions were and are based upon his use of a Vita-Mix product that Vita-Mix claims is covered by the '021 patent.  (*See also* Exh. D, Rashidi Dep. at 110:20-111:5 ("the air pocket being created from an air channel of a cross-sectional size defined by a member associated with the blades" Dr. Rashidi's opinion is that "[p]hysically this is not correct."); 115:22-116:22 (the "member associated with the blades" is "one of the least important factors" and the "other parameters or factors affect[ing] the air channel" are "more important.").)

Despite Vita-Mix's attempts to distinguish the use and testing of Vita-Mix's blenders by Dr. Rashidi as not enablement testing, Dr. Rashidi distinguished his enablement testing of the Vita-Mix product from his noninfringement testing of the Accused Products:

Q:  You said that you tested the Vita-Mix.  What do you mean by that in terms of enablement?

A:  Enablement, I tested -- I created two types of extreme fluids.  One is very thin like pure water and I have added a couple of drops of food coloring just for visualization so it doesn't change the viscosity or anything and then I have ran the Vita-Mix device from low RPM and I have done a series of tests.  One was totally without the plunger and as you increase the RPM you see the formation of an air channel which dips down and as you increase the RPM, that air channel keeps traveling toward the blade and if you keep the RPM low enough, the air channel is there but the water is transparent.  You can see through.  It's translucent.  If you increase the RPM beyond a certain level, the channel reaches the blade and you have air reaching the blade and that blade breaks up that air channel and makes the water murky so it is no longer see-through and then when you lower the RPM, the same thing happens.  That's experiment number one.

Then if I am a - - kind of observant, I could have an ordinary skill in the art or I could be a scientist or ordinary people.  I say, okay, now that this channel is generated, if I put a solid piece in there, I occupy the space so I am going to get rid of that channel, so therefore, I designed this and I go and get a patent for it.  But when I do the same test with a plunger in, in vertical position untouched and I start increasing the RPM, the same channel starts -- starts to form again despite the existence of the plunger and it travels down on the sides of the plunger and every now and then, as a result of fluid mechanics action in there, kind of bubbles of air is thrown toward the blade.  And if I increase that, at some point the channel forms as an annular space around the plunger or device and it gets to the blade.  In other words, existence of this plunger is not able to prevent formation of a channel to begin with which eventually translates to an air pocket.

Q:  Now -- go ahead.

A:  So this was for one class of fluids which was kind of Newtonian fluid and low viscosity, relatively low viscosity fluid and so forth.

Then if you go to the extreme case which makes your fluid a little bit more viscus [sic] like a pancake batter, and usually when you mix flour and water the fluid becomes usually non-Newtonian -- and if you want an accurate definition of that I can tell you later -- but under the same condition now you don't observe anything because the content is not translucent.  But when you

24

> turn on the machine, somehow air gets around this infamous plunger, gets to the blade and stays there.  And depending upon many other variables, either you totally make the blender inefficient or partially efficient and then when you turn the system off, one or two big bubbles of air comes up and that is the air that was supposed not to be there because of the plunger.

(Exh. D, Dep. Rashidi at 146:3-149:25; *See also* Exh. D, Rashidi Dep. at 332:2-333:6 (Dr. Rashidi mixed corn syrup in a Vita-Mix blender "to demonstrate that the size of the air channel is very much dictated by the liquid consistency.  Because the member associated blade is the same size, the RPM is almost the same, it's a little bit less because of the viscosity, but I'm trying to say that everything else constant in this machine, the very fact that you change your liquid, your air channel totally kind of changes in configuration.").)

Even if Dr. Rashidi had not used or conducted any testing, his opinion as one of at least ordinary skill in the art of blenders is supported by actual information and evidence in this case. Vita-Mix's reliance upon *Stirick v. Dreamworks, LLC*, 2008 WL 29443 * 6, to support its argument that Dr. Rashidi's opinion on enablement is insufficient is misplaced.  In *Stirick*, the Federal Circuit affirmed the district court's entry of the defendants' motion for summary judgment of invalidity that the asserted patents were not enabled.  The "[d]efendants supported their motion for summary judgment of invalidity by reference to the teachings of the specifications and the opinions of their two experts."  *Id.* at *5.  The Federal Circuit agreed that defendants carried their burden by reference to the teachings of the specifications of the asserted patents and the explanations of their experts alone.  The *Sitrick* district court found and the Federal Circuit agreed, on the other hand, that the opinion and testimony of plaintiff's expert did not create a genuine issue of material fact because he admitted that he was not "one skilled in the art."  Because plaintiff's expert was not "one skilled in the art" his opinion on enablement was conclusory and unsupported because "[e]nablement is determined from the vantage point of one skilled in the art. . . . Dr. Vacroux's equivocations regarding whether someone skilled in the art could perform the claim[] . . . does not create a genuine issue of material fact." *Id.* at *6.

In this case, Dr. Rashidi is at least one of ordinary skill in the blender art and Vita-Mix has not argued to the contrary in the present motion. (*See* Exh. C. Rashidi Report.) Additionally, Dr. Rashidi's opinion on enablement is based upon the teachings of the specification of the '021 patent and his understanding of the science behind blenders. (*Id.*) Further, a patent can be held invalid on its face, based solely on the patent's specification. *TurboCare Division of Demag Delaval Turbomachinery Corp. v. General Electric Co.,* 264 F.3d 1111, 1119 (Fed. Cir. 2001) (upholding a grant of summary judgment holding that "[n]o reasonable juror could find that [an appellant's] original disclosure was sufficiently detailed to enable one of skill in the art to recognize that [the appellant] invented what is claimed.")

Furthermore, expert testimony regarding undue experimentation has been found to be enough to raise material facts sufficient to defeat summary judgment. *Crown Operations Int'l, Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1381 (Fed. Cir. 2002). In *Crown Operations*, the plaintiff and accused infringer, Crown, was able to show undue experimentation based upon the statements of its expert witness. In *Crown*, the defendant patentee, Solutia, moved for, and the district court granted, summary judgment dismissing Crown's claim that the asserted patent was invalid for lack of enablement. *Id.* at 1374-75. On appeal, Solutia argued that its claim was enabled because "a person of ordinary skill in the pertinent art could overcome any ambiguities in the [claimed] wave index calculation without undue experimentation by testing a limited number of possibilities for computing the wave index." *Id.* at 1379. Crown rebutted this argument through the statements of its expert. *Id.* First, Crown's experts offered statements that one of the variables (amplitude) in the claimed wave index calculation was not defined and that a person of ordinary skill in the art would not know how to measure the variable. Second, Crown's experts noted that the asserted claim covered multiple inoperative embodiments. Third, Crown's experts offered statements that there was potential indeterminacy of Solutia's disclosed wave index rules for calculating the wave index. Solutia's attempts to rebut Crown's expert testimony with details from the '258 patent concerning how to calculate the wave index and the

fact that inoperative embodiments do not necessarily invalidate a claim were insufficient.  Thus, Crown argued that "the amplitude ambiguity and potential inoperative embodiments, combined with ambiguities in the smoothing rules, seems to suggest a wide range of possibilities which one must try.  With this wide range of possibilities, [the Federal Circuit agreed] that Crown ha[d] raised a genuine issue of material fact as to the amount and type of experimentation required, facts that will determine whether such experimentation is undue."  *Id*.  Based on Crown's experts' statements described above, the Federal Circuit reversed the district court's grant of summary judgment dismissing Crown's enablement claim, stating that "[w]hile ultimately a trier of fact may reach the conclusion that any required experimentation is not undue, Crown has shown that sufficient potential for undue experimentation exists such that disposal on summary judgment is improper."  *Id*.  Accordingly, Crown's expert statements were sufficient to raise material facts sufficient to defeat summary judgment without an actual showing of undue experimentation.  *Id.*

Like in *Crown*, Defendants in this case have shown that "sufficient potential for undue experimentation exists such that disposal on summary judgment is improper" through the opinion of one skilled in the art, its expert, Dr. Rashidi.  Dr. Rashidi

> **b)**  **Vita-Mix's Own Documents Demonstrate that Claim 1 of the '021 Patent is Invalid for Lack of Enablement and Creates a Genuine Issue of Material Fact Sufficient to Deny Vita-Mix's Motion for Summary Judgment.**

After discovery in this case had closed, Defendants became aware of a number of internal Vita-Mix documents that Vita-Mix had failed to disclose or produce to Defendants in this case. Included among these documents were two memoranda, dated June 11, 1999 and March 15, 2001, that both address air pockets in blenders, the very issue in the present case, and which problem had supposedly been eliminated by the '021 patent.  (Exh. J, June 11, 1999 Vita-Mix memo. and Exh. K, March 15, 2001 Vita-Mix memo.)  These memoranda were created between June 11, 1999 and March 15, 2001 more than five years after the issuance of the '021 patent. (*Id*.)  In these Vita-Mix memoranda, Vita-Mix personnel discuss how the only way before 1999

to resolve the air pocket problem was through a staged level of tamping and stirring of the contents of the blender to release air pockets only after they had formed. (Exh. J at pp. 1-2.) Nowhere in these Vita-Mix memoranda does it acknowledge or recognize that Vita-Mix supposedly had solved the air pocket problem with the invention of the '021 patent. Additionally, the Vita-Mix patent that evolved from these memoranda, U.S. Patent No. 7,063,456 ("'456 patent") issued on June 20, 2006, and assigned to Vita-Mix does not disclose the '021 patent and distinctly stated:

> As a result, the blades are spinning in a pocket of air and blending is thwarted. When such occurs, the user must usually manually stir the fluid or otherwise break the bridge to force the ingredients down toward the blades. However, with many viscous fluids, the bridge will again form requiring further user intervention. The blending of viscous fluids without manual intervention thus remains a problem in the food processing art.

(Exh. L, '456 patent at col. 1, ll. 46-54 (emphasis added).)  Thus, Vita-Mix itself knew the '021 patent is invalid as it does not prevent its claimed purpose – preventing the formation of an air pocket.

The Vita-Mix memoranda further disclose that there is a host of variables, including those variables identified by Dr. Rashidi in his December 17, 2007 Expert Report, that affect the properties of an air channel and the formation of an air pocket in a blender.  The March 15, 2001, Vita-Mix memorandum titled "Significant Features of the Advanced Blending Container" identifies the position of the blades, the slope of the container bottom, the inside shape of the container, and flow vanes as affecting the circulation pattern, and thus cross-sectional size of the air channel, during blending operations.  (Exh. K.)  The March 15, 2001 Vita-Mix memorandum supports Dr. Rashidi's opinion that there are many factors other than "a member associated with the rotating blades" that define the size and shape of the air channel or vortex created by the blades of a blender.

The Vita-Mix memoranda further suggest that the '021 patent's disclosure of the formation and prevention of air pockets is incorrect.  The '021 patent does not address or even

28

make mention of the affects of a turbulent flow pattern on the formation and prevention of air pockets.  In fact, the '021 patent not only ignores turbulent flow but actually claims that a consistent stable flow pattern is desirable.  (Exh. F, '021 patent at col. 1, ll. 20-23.)  The '021 patent claims that "as long as the circulation pattern is consistent and uniform, efficient pulverization and mixing takes place."  (*Id*.) The '021 patent also claims that use of a plunger device ensures a stable and consistent even flow pumping pattern of the fluid, and by so doing prevents the formation of air pockets and eliminates the problems associated with the formation of air pockets.  (*Id*. at col. 4, ll. 8-14.)

In direct contrast to the '021 patent, the June 11, 1999, Vita-Mix memoranda expressly states that it is a stable and consistent even flow pattern of the fluid in a blender that creates the air pocket problem.   (Exh. J at p. 4.)  The June 11, 1999, Vita-Mix memorandum discloses that the only way to resolve the air pocket problem caused by the stable even flow patterns of the then available blenders, which would have included the Vita-Mix 5000 blender line and which Vita-Mix claims is covered by the '021 patent, was through:

> several stages.  These stages are typically separated by a manual tamping and stirring procedure where additional ingredients may or may not be added.  This 'staged blending' is necessitated by the tendency of the thick near frozen mixture to blend only momentarily and to then 'freeze up' and cease blending.  This 'frozen up' condition is often characterized by the entrapment of an air bubble around the blades, thus rendering them ineffective.  The manual tamping and stirring releases the air bubble aw well as forces the ingredients downward toward the blades."

(Exh. J. at pp. 1-2.)  This June 11, 1999, Vita-Mix memoranda further explains, and in direct opposition to the disclosure of the '021 patent, that "it can be deduced that if the flow pattern in the container can be made sufficiently vigorous and unbalanced, the undesirable stable-flow pattern of Figure 2(b) can be avoided or at least minimized."  (*Id*. at 4.)

Therefore, if the '021 patent actually prevents the formation air pockets and has done so since 1992 as Vita-Mix claims in this case, then Vita-Mix's '456 patent is unenforceable due to Vita-Mix's material misrepresentations that "[t]he blending of viscous fluids without manual

intervention thus remains a problem in the food processing art" in 2002.  However, if Vita-Mix's statement to the PTO concerning its '456 patent is correct, then the '021 patent is invalid.

Defendants and Dr. Rashidi did not have the benefit of Vita-Mix's June 11, 1999 and March 15, 2001, memorandum when Dr. Rashidi's December 17, 2007, expert report on invalidity was submitted or when Dr. Rashidi was deposed.  The information disclosed in the Vita-Mix memorandum validate Dr. Rashidi's opinion that claim 1 of the '021 patent lacks enablement.  The Vita-Mix memorandum alone raise substantial genuine issues of material of fact sufficient to deny Vita-Mix's present motion for summary judgment.

## III.  CONCLUSION

Based upon the forgoing arguments and evidence, Defendants respectfully request that the Court deny Vita-Mix Corporation's Motion for Summary Judgment on Defendants' First Counterclaim and Affirmative Defenses of Patent invalidity.

DATED this 31st day of March, 2008.

/s/ Clinton E. Duke
Larry R. Laycock (Admitted *Pro Hac Vice)*
David R. Wright (Admitted *Pro Hac Vice)*
Robert E. Aycock (Admitted *Pro Hac Vice)*
Clinton E. Duke (Admitted *Pro Hac Vice)*
WORKMAN NYDEGGER
60 E. South Temple, Ste. 1000
Salt Lake City, Utah 84111

Attorneys for Defendants
BASIC HOLDING, Inc. f/k/a
BACK TO BASICS PRODUCTS, INC,
FOCUS PRODUCTS GROUP, LLC,
FOCUS ELECTRICS, LLC, and,
WEST BEND HOUSEWARES, LLC

## CASE AND PAGE CERTIFICATION

The undersigned confirms that this supporting memorandum adheres to the page limitation of thirty (30) pages set forth in Local Rule 7.1 (f) for dispositive motions in "complex" track cases.

/s/Clinton E. Duke
Larry R. Laycock (Admitted *Pro Hac Vice)*
David R. Wright (Admitted *Pro Hac Vice)*
Robert E. Aycock (Admitted *Pro Hac Vice)*
Clinton E. Duke (Admitted *Pro Hac Vice)*
WORKMAN NYDEGGER
60 E. South Temple, Ste. 1000
Salt Lake City, Utah 84111

## CERTIFICATE OF SERVICE

This will certify that on March 31, 2008, a copy of the foregoing **DEFENDANTS' OPPOSITION TO VITA-MIX CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' FIRST COUNTERCLAIM AND AFFIRMATIVE DEFENSES OF PATENT INVALIDITY** was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's ECF System.

 Clinton E. Duke
Larry R. Laycock (Admitted *Pro Hac Vice)*
David R. Wright (Admitted *Pro Hac Vice)*
Robert E. Aycock (Admitted *Pro Hac Vice)*
Clinton E. Duke (Admitted *Pro Hac Vice)*
WORKMAN NYDEGGER
60 E. South Temple, Ste. 1000
Salt Lake City, Utah 84111